# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BLUE COMPASS RV, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-715 |
| | § | Judge Mazzant |
| ZURICH AMERICAN INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

## OMNIBUS MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Blue Compass RV, LLC's Motion for Partial Summary Judgment on Liability (Dkt. #20) and Defendant's Rule 56(f)(1) Cross Motion for Summary Judgment (Dkt. #32) (the "Motions"). Having considered the Motions, the relevant pleadings, and the applicable law, the Court finds the Motions should be **DENIED**.

## BACKGROUND

### I.     Factual Background

This is an insurance coverage case. Plaintiff Blue Compass RV, LLC f/k/a RV Retailer, LLC ("Plaintiff") is a national RV retailer with inventory at more than 100 locations across the United States (Dkt. #1 at ¶ 5). Defendant Zurich American Insurance Company ("Defendant") is an insurance company with its headquarters in Schaumberg, Illinois (Dkt. #4 at p. 10). The instant lawsuit between the parties arises out of Defendant's decision to deny flood coverage under an Auto Dealers Insurance Policy (the "Policy") for damages to Plaintiff's RV inventory (the "Loss") (Dkt. #1). Plaintiff owns two adjacent properties—1368 U.S. Route 2, East Montpelier, Vermont ("Lot 1368") and 1498 U.S. Route 2, Easter Montpelier, Vermont ("Lot 1498")—located across the street from Winooski River, a flood zone. (Dkt. #1 at p. 1; Dkt. #4 at p. 12; Dkt. #31 at p. 7).

The following facts relate to the formation of the Policy and the subsequent denial of Plaintiff's claim for coverage under that Policy.

On September 25, 2022, one of Defendant's Director of National Accounts, Adam Horst ("Horst"), contacted Plaintiff's former Chief Financial Officer and a representative from Plaintiff's insurance broker, Marsh and McLennan Agency ("Marsh"), asking if Defendant could provide Plaintiff with an insurance coverage proposal for the upcoming policy term (Dkt. #20 at p. 9; Dkt. #31 at pp. 7–8).[1] Lucinda Cooper ("Cooper"), from Marsh, provided Horst with the necessary data to create the proposal, including the details of Plaintiff's expiring insurance coverage with its prior insurer (the "Prior Coverage Spreadsheet") (Dkt. #20 at p. 9; Dkt. #21-2 at p. 5). The Prior Coverage Spreadsheet Marsh provided to Defendant notes that Lot 1368 and Lot 1498 were "NOT COVERED" under the "Current Flood Coverage" column (Dkt. #31 at p. 8; Dkt. #31-15 at ¶ 6; Dkt. #31-16 at p. 5).

Defendant's underwriter, Jeniffer Miller ("Miller") reviewed the information Cooper provided and noted which of Plaintiff's locations were in high flood risk zones, as those locations would be excluded from flood coverage (Dkt. #31 at p. 8; Dkt. #31-15 at ¶ 7). On November 11, 2022, Horst sent Cooper a spreadsheet incorporating the Prior Coverage Spreadsheet and adding two critical columns regarding catastrophic coverage: "Proposed Wind/Hail" and "Proposed Flood" coverage (the "November 11 Spreadsheet") (Dkt. #20 at p. 9; Dkt. #20-8). The November 11 Spreadsheet listed Lot 1368 and Lot 1498 as "NOT COVERED" under the "Proposed Flood" coverage column, which coincided with the prior coverage Marsh disclosed to Defendant in the

---

[1] As its insurance broker and main point of contact when negotiating the instant Policy, Defendant alleges that Marsh acted as Plaintiff's agent throughout all the relevant negotiations (Dkt. #31 at p. 8–9).

Prior Coverage Spreadsheet (Dkt. #20 at p. 20; Dkt. #20-8 at p. 5; Dkt. #31 at p. 8). Importantly, both the Prior Coverage Spreadsheet and the November 11 Spreadsheet reported there was five million dollars' worth of inventory at Lot 1498 but no inventory at Lot 1368 (Dkt #31 at p. 9; Dkt. #20-8 at p. 5; Dkt. #20-8 at p. 5).

On November 29, 2022, Horst delivered Defendant's insurance coverage proposal to Cooper for Plaintiff (the "Coverage Proposal") (Dkt. #1 at ¶ 8; Dkt. #20-9; Dkt. #20 at p. 10). The Coverage Proposal included an "Auto Dealers Coverage Form Schedule of Locations," which included Lot 1368 and Lot 1498 (Dkt. #1 at ¶ 9; Dkt. #20 at p. 10; Dkt. #20-9 at pp. 13–20). The Coverage Proposal also identified various locations where flood coverage exclusions applied (Dkt. #20 at p. 10; Dkt. #20-9 at pp. 29–33). Lot 1498 was one of the various locations identified for flood coverage exclusion but not Lot 1368, which differed from the Prior Coverage Spreadsheet and November 11 Spreadsheet that both excluded Lot 1368 and Lot 1498 from flood coverage (Dkt. #1 at ¶ 10; Dkt. #20 at p. 11; Dkt. #20-9 at p. 33). The Coverage Proposal included similar differences for other locations with respect to the flood coverage that were included or excluded for coverage in the November 11 Spreadsheet (Dkt. #20 at pp. 11–12; Dkt. #20-9).

Plaintiff ultimately accepted Defendant's Coverage Proposal (Dkt. #20 at p. 13), and so, Defendant issued the Policy to Plaintiff, effective December 7, 2022, through December 7, 2023 (Dkt. #1 at ¶ 13; Dkt. #20-11). The Policy, consistent with the Proposal but inconsistent with the November 11 Spreadsheet and Prior Coverage Spreadsheet, did not exclude Lot 1368 from flood coverage (Dkt. #20-11 at p. 36). On December 19, 2022, Megan Fuchs ("Fuchs"), on behalf of Plaintiff, provided Horst with an updated copy of the November 11 Spreadsheet, detailing specific changes in the reported inventory value at several locations scheduled under the Policy (The

"December 19 Final Inventory Schedule") (Dkt. #20 at p. 14; Dkt. #20-14). The December 19 Final Inventory Schedule was delivered twelve days after the Policy's effective date, and for the first time, Plaintiff informed Defendant there was one-million dollars' worth of inventory at Lot 1368 (Dkt. #20 at p. 14; Dkt. #2014 at p. 11). Horst reviewed the December 19 Final Inventory Schedule and asked Marsh whether an endorsement needed to be issued so Plaintiff could seek difference-in-conditions insurance coverage for the locations excluded from flood coverage (Dkt. #20-14 at p. 2; Dkt. #31 at pp. 9–11). However, no endorsement was issued at this time because Plaintiff did not request it (Dkt. #20 at p. 20; Dkt. #31 at p. 11).

On July 10, 2023, major rain flooded Plaintiff's dealerships located at Lot 1368 and Lot 1498, causing damage to Plaintiff's RV inventory at Lot 1368 (Dkt. #1 at pp. 1–2; Dkt. #20 at p. 17). Plaintiff timely submitted a claim for the Loss, and the claim was assigned to one of Defendant's adjusters, Mike Gerweck ("Gerweck") (Dkt. #20 at p. 17; Dkt. #20-15). Gerweck did not schedule an inspection of the Loss and instead, allowed Plaintiff to move the inventory at Lot 1368 to mitigate its damages (Dkt. #20 at p. 17; Dkt. #20-17).

Plaintiff's total estimated property damage for the Loss at Lot 1368 is $1,360,990.62 (Dkt. #20 at p. 24). Both parties agree the Policy, as issued, did not list Lot 1368 as a location excluded from flood coverage (Dkt. #1 at p.1; Dkt. #4 at p. 11; Dkt. #20 at p. 15; Dkt. #31 at p. 6). However, Defendant argues the Policy failed to accurately document what Plaintiff and Defendant negotiated and agreed to regarding flood coverage at Lot 1368; namely, it was the parties' specific intent to exclude flood coverage for the 1368 Lot (Dkt. #32 at p. 6). The discrepancy is critical to the Policy's Physical Damage Comprehensive coverage because, as issued, Plaintiff's Loss at Lot 1368 is covered up to the Policy's limit (Dkt. #20 at p. 15).

On July 31, 2023, Defendant denied Plaintiff coverage for the Loss at Lot 1368 based on "Endorsement No. 20" effective December 7, 2022 (Dkt. #20 at p. 19; Dkt. #20-6 at p. 4). Plaintiff alleges Endorsement No. 20 was not issued until after the date of the Loss (Dkt. #20 at p. 19). Defendant admits that Endorsement No. 20 was issued on July 28, 2023, post-Loss; however, Defendant argues Endorsement No. 20 merely confirmed the parties' prior understanding that there was no flood coverage for Lot 1368, thus confirming the parties' intent (Dkt. #20-13 at p. 2; Dkt. #31 at p. 21)

## II.   Procedural Background

On August 9, 2024, Plaintiff filed the instant suit seeking declaratory judgment that the Policy covered the Loss at Lot 1368 (Dkt. #1 at p. 3). Plaintiff also alleges breach of contract, violation of the Texas Prompt Payment of Claims Act, unfair claim settlement practices, and common law bad faith (Dkt. #1 at pp. 11–14). Defendant asserts various affirmative defenses, alleges its own counterclaim for cancellation of the insurance policy and reformation of the insurance policy, and similarly seeks a declaratory judgment from the Court interpreting the insurance policy (Dkt. #4).

On August 15, 2024, Plaintiff filed its Motion for Partial Summary Judgment on Liability for its breach of contract and violation of Chapter 541 of the Texas Insurance Code causes of action (Dkt. #20). On October 2, 2025, Defendant filed its Response to Plaintiff's Motion for Partial Summary Judgment (Dkt. #31).[2] On October 6, 2025, Plaintiff filed its Reply in Support of Its

---

[2] Defendant originally filed its Response on September 29, 2025, but the filing was considered deficient and was refiled (Dkt. #27). Defendant's Response included both its Response to Plaintiff's Motion for Partial Summary Judgment (Dkt. #31) and its Cross Motion for Summary Judgment (Dkt. #32). The Clerk's Office docketed the same filing twice to reflect the separate relief sought. The Court cites to the Defendant's Response as Dkt. #31 and to Defendant's Cross Motion for Summary Judgment as Dkt. #32.

5

Motion for Partial Summary Judgment (Dkt. #34). On October 13, 2025, Defendant filed its Sur-Reply to Plaintiff's Motion for Partial Summary Judgment (Dkt. #35).

Also on October 2, 2025, Defendant filed its own Cross Motion for Summary Judgment on its claim to reform the Policy (Dkt. #32). On October 27, 2025, Plaintiff filed its Response (Dkt. #40). On November 3, 2025, Defendant filed its Reply (Dkt. #41). The Motions are now ripe for adjudication.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion [for summary judgment]." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward

with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. *See Solomon v. Hous. Corrugated Box Co.*, 526 F.2d 389, 396–97 (5th Cir. 1976). Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

### I. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for summary judgment based on three arguments: (1) Defendant breached the Policy when it denied coverage for flood loss at a location where flood coverage was not excluded (Dkt. #20 at pp. 16–20); (2) Defendant cannot reform the Policy (Dkt. #20 at pp. 20–26); and (3) Defendant, in denying coverage for the Loss, violated Section 541.061 of the Texas Insurance Code (Dkt. #20 at p. 29).

In contrast, Defendant argues the Policy failed to accurately document what the parties negotiated and agreed to for coverage at Lot 1368 (Dkt. #31 at p. 6). Specifically, Defendant alleges, either by mistake or Plaintiff's misrepresentations as to the inventory that existed at Lot 1368, the Policy, as written, does not reflect the parties' true agreement found in the Prior Coverage Spreadsheet and in the November 11 Spreadsheet to exclude coverage to a location found in a flood zone with a million dollars' worth of inventory (Dkt. #31 at p. 22).

After careful review of the record and the arguments, the Court is not convinced that Plaintiff has met its burden demonstrating that there is no material issue of fact as to Plaintiff's breach of contract and violation of Chapter 541 of the Texas Insurance Code claims entitling Plaintiff to judgment as a matter of law. Accordingly, the Court finds Plaintiff's Motion for Partial Summary Judgment (Dkt. #20) should be denied.

## II. Defendant's Cross Motion for Summary Judgment

Under the Court's Amended Scheduling Order, the deadline for filing dispositive motions was pushed from June 16, 2025, to August 15, 2025 (Dkt. #16 at p. 1). Defendant's purported Cross Motion for Summary Judgment was filed on October 2, 2025 (Dkt. #32), which is untimely. Although Defendant filed a motion for an extension of time to file its opposition to Plaintiff's Motion for Partial Summary Judgment (Dkt. #24), which the Court granted (Dkt. #25), Defendant did not request additional time to file a dispositive motion or even note that it intended to file a dispositive motion on the issue of reformation (Dkt. #24). Accordingly, because Defendant filed its motion forty-eight days after the deadline provided in the Amended Scheduling Order, the Court finds Defendant's Cross Motion for Summary Judgment (Dkt. #32) should be denied.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Blue Compass RV, LLC's Motion for Partial Summary Judgment on Liability (Dkt. #20) and Defendant's Zurich American Insurance Company's Cross Motion for Summary Judgment (Dkt. #32) are hereby **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 12th day of November, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE