# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| BLUE COMPASS RV, LLC f/k/a RV RETAILER, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 4:24-cv-715 |
| | § | Judge Mazzant |
| ZURICH AMERICAN INSURANCE COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Blue Compass's Motion for New Trial or to Alter or Amend the Judgment (Dkt. #92). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

This case arises out of an insurance coverage dispute between Plaintiff Blue Compass RV, LLC f/k/a RV Retailer, LLC ("Plaintiff") and Defendant Zurich American Insurance Company ("Defendant") (Dkt. #1). The factual background of this case is set forth in detail in the Court's May 27, 2026 Findings of Facts and Conclusions of Law (Dkt. #99). As relevant here, the Court conducted a bench trial in this matter from December 8–10, 2025 (Dkt. #60; Dkt. #61; Dkt. #62). At the conclusion of trial, the Court requested briefing on various legal issues, which the parties submitted. After reviewing the briefs, the trial transcript, the exhibits, and its own independent research, the Court determined that Defendant "is entitled to reformation of the insurance policy at issue," thereby excluding flood coverage for the relevant location, and Plaintiff "takes nothing in

this lawsuit" (Dkt. #90 at p. 18). On May 27, 2025, the Court entered final judgment based upon its Findings of Fact and Conclusions of Law (Dkt. #91).

Twenty-eight days later, on June 24, 2026, Plaintiff filed the instant Motion under Federal Rules of Civil Procedure 59(a)(1)(B), (a)(2), and (e), arguing "the Court applied the wrong legal standard for reformation and relied on clearly erroneous factual findings" (Dkt. #92 at p. 2). In Plaintiff's view, it is entitled to a new trial, or in the alternative, Plaintiff asks the Court to alter its Final Judgment and enter judgment in its favor on all claims (Dkt. #92 at p. 2). The parties briefed the issues raised in the Motion (Dkt. #93; Dkt. #94; Dkt. #95; Dkt. #97).

The Motion is now ripe for adjudication.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 59(a)

Under Rule 59, after a nonjury trial, a court may grant a new trial on any or all issues to any party "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court," or a court may "on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." FED. R. CIV. P. 59(a)(1)(B), (a)(2). "A motion for a new trial in a nonjury case should be based upon a manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons." *Garcia v. Ramsis*, No. 4:21-CV-650-SDJ, 2022 WL 1036770, at *2 (E.D. Tex. Apr. 6, 2022) (citation modified). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (citation modified). Furthermore, "[t]he

decision to grant or deny a motion for a new trial is generally within the sound discretion of the trial court." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982).

## II. Federal Rule of Civil Procedure 59(e)

A motion seeking to reconsider a final judgment that is filed within twenty-eight days of the judgment is considered under Rule 59(e). *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *Milazzo v. Young*, No. 6:11-cv-350-JKG, 2012 WL 1867099, at *1 (E.D. Tex. May 21, 2012). This type of motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (citation modified).

A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir 1990)). "Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (citation modified). "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Milazzo*, 2012 WL 1867099, at *1 (citing *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 567 (5th Cir. 2003)). "Altering, amending, or reconsidering a judgment is an extraordinary remedy that courts should use sparingly." *Id.* (citing *Templet*, 367 F.3d at 479).

## ANALYSIS

Plaintiff moves under Federal Rules of Civil Procedure 59(a)(1)(B), (a)(2), and (e) for a new trial or for the Court to alter its Final Judgment and enter judgment in favor of Plaintiff on all claims (Dkt. #92). Notably, in its Motion, Plaintiff does not argue that newly discovered evidence or an intervening change in the controlling law warrants this new trial or altered judgment. Instead, Plaintiff argues the Court's May 27, 2026 Findings of Facts and Conclusions of Law are based on

manifest errors of law and fact. The Court considers Plaintiff's three arguments below, but ultimately, the Court finds that Plaintiff has not presented any new evidence, legal theory, or argument that the Court did not consider and reject or could have been offered or raised before issuing its Final Judgment. Again, altering, amending, or reconsidering a judgment is an *extraordinary* remedy that courts should use sparingly. The Court does not find it appropriate to do so here.

First, Plaintiff argues Defendant "is not entitled to reformation because the Court misapplied the legal standard for reformation" (Dkt. #92 at p. 3). To be clear, Plaintiff is not arguing the Court relied on bad law (Dkt. #92 at 3). Indeed, Plaintiff admits that the Court properly relied on *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987), holding that reformation requires two elements: (1) an original agreement and (2) a mutual mistake, made after the original agreement, in reducing the original agreement to writing (Dkt. #90 at p. 13). However, in Plaintiff's view, the Court "misapplied" this law "because there was neither an original agreement to which the Court may reform the Policy nor a mutual mistake made after that original agreement in reducing the original agreement to writing" (Dkt. #92 at p. 4). Plaintiff attempts to rehash evidence and legal arguments that were already considered and rejected or could have been offered or raised before the entry of judgment. *Templet*, 367 F.3d at 479. Indeed, the Court found the following:

> There was an *original understanding* that Lot 1368 should have been listed amongst the locations excluded for flood coverage along with the adjacent property, Lot 1498. However, because of a mutual mistake, Lot 1368 was omitted from the Policy's excluded locations for flood coverage. Specifically, Plaintiff *mistakenly* reported that no inventory existed at Lot 1368, and relying on this information, Defendant's underwriters prepared coverage proposals that could not list Lot 1368 as an excluded location for flood coverage because no inventory was reported to exist there. Thus, both parties labored in binding the Policy under this misconception, when in fact, inventory did exist at Lot 1368, but the inventory that sat on this lot was allocated exclusively to Lot 1498, which *was* excluded for flood coverage. Once

> Plaintiff accurately reported that inventory did indeed exist at Lot 1368 on December 19, 2022, after the Policy was bound, it was Plaintiff's responsibility to request an endorsement to the Policy. Although Defendant also overlooked this inventory update, the endorsement request could only be made by Plaintiff, and Plaintiff admits as much. But Plaintiff mistakenly did not do so. Accordingly, the Court finds Defendant is entitled to reformation of the Policy based on a mutual mistake.

(Dkt. #90 at pp. 13–14 (emphasis added)).

The Court then proceeded to list the clear and convincing evidence it relied on to make that determination, including evidence that (1) Plaintiff's previous insurer did not provide coverage for Lot 1368, and (2) testimony from Plaintiff's Chief Financial Officer's that Plaintiff did not negotiate with carriers as to coverage at individual locations, but instead provided carriers with all needed information (Dkt. #90 at p. 14). Although Plaintiff generally disagrees with the Court's conclusions, "[m]ere disagreement with a district court's order does not warrant reconsideration of [an] order." *Westport Ins. Corp. v. Stengel*, 571 F. Supp. 2d 737, 738 (E.D. Tex. 2005). Accordingly, based on this first argument, there is no basis to grant a new trial or alter and amend the judgment.

Second, Plaintiff argues that the Court committed a manifest error of fact in finding Defendant's underwriting methods or system would not allow a property to be listed on an exclusion if no inventory was reported at that property (Dkt. #92 at p. 11). In Plaintiff's view, "the Court's finding regarding [Defendant]'s system's capabilities is 'implausible in light of the record considered as a whole,' and therefore clearly erroneous" (Dkt. #92 at p. 12 (citing *Ladd v. Stephens*, 748 F.3d 637, 645 (5th Cir. 2014)). In its findings on this issue, the Court credited the testimony of one of Defendant's underwriters, who explained that Lot 1368 was not an excluded location for flood overage in either Proposal because Plaintiff did not report that inventory existed there, and

Defendant could not exclude flood coverage for inventory that did not exist and therefore was not at risk for perils (Dkt. #90 at p. 15).

Plaintiff argues that there are various examples in the preliminary spreadsheets and coverage proposals that contradict the Court's reliance on this underwriter's testimony (Dkt. #92 at pp. 12–13). But this is not new evidence or a new legal argument, and Plaintiff had the opportunity to cross-examine this underwriter on this issue. Again, a motion for new trial or a motion to amend the judgment is not an avenue to relitigate the same issues or to raise new arguments or to submit evidence that was available at the time of the original hearing. Indeed, at the bench trial, Plaintiff provided no evidence contradicting the underwriter's testimony that Lot 1368 and Lot 1498 were specifically located in "Flood Zone AE," according to the Federal Emergency Management Agency, which is a zone that Defendant does not generally cover for floods, and seemingly, Plaintiff's prior insurer also did not cover, unless there was large deductible program, which was not the case here (Dkt. #90 at pp. 14–15). Accordingly, Plaintiff has not persuaded the Court that its Motion should be granted based on this argument.

Finally, Plaintiff argues that "[r]egardless of whether the Court modifies its judgment as to reformation, the Court should modify its judgment as to [Plaintiff]'s bad-faith claims under both Texas common law and Chapter 541 of the Texas Insurance Code" (Dkt. #92 at p. 15). Specifically, Plaintiff argues the Court misread *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499 (Tex. 2018). In the Court's May 27, 2026 Findings of Facts and Conclusions of Law, the Court explained the following:

> Under Texas law, "[a]n insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018). "However, when an insured seeks to

> recover policy benefits as damages for an insurer's statutory or common law violation and 'the issue of coverage is resolved in the insurer's favor, extra-contractual claims,' such as claims for violating . . . Sections 541 and 542 of the Texas Insurance Code, and the common law duty of good faith and fair dealing, 'do not survive.'" *In re New York Inn, Inc.*, 2025 WL 999084, at *9 (quoting *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010)).

(Dkt. #90 at p. 17).

The Court then found that because it had already concluded Defendant was entitled to reformation, the issue of coverage had been resolved in the insurer's favor, which meant Plaintiff's remaining extra-contractual claims did not survive (Dkt. #90 at p. 18).

In its Motion, Plaintiff argues that this general rule under *Menchaca* does not apply because Defendant denied Plaintiff's flood coverage claim for Lot 1368 when it was, in fact, covered under the policy as written (Dkt. #92 at p. 15). Plaintiff asserts that the Court "concluded that Endorsement 20 was ineffective when issued based solely on the clear language of the endorsement" (Dkt. #92 at p. 15). In Plaintiff's view, "Defendant actively misrepresented the Policy language," and "[i]t was only after the Court granted reformation that the claim became retroactively not covered" (Dkt. #92 at p. 15). Plaintiff goes on to argue that "[i]t is contrary to that legislative mandate to encourage an insurer who thinks it could prevail on a reformation claim from misrepresenting the policy language in an effort to discourage its insured from even challenging the reformation claim" (Dkt. #92 at p. 16).

The Court disagrees. Although the Court did find that Endorsement 20 was ineffective, it did not do so based solely on the language of the endorsement or based on a finding that Defendant attempted to actively misrepresent the policy's language. Instead, the Court found that Endorsement 20 was Defendant's attempt to *correct* the policy and found "that it was Plaintiff's

second mistake not to request that Defendant issue an endorsement to the Policy when the risk at Lot 1368 'changed' for the first time after the Policy was bound" (Dkt. #90 at p. 16).

To conclude this, the Court relied on testimony from Lucinda Cooper, a representative of Plaintiff's insurance broker, MMA (Dkt. #90 at p. 16). Specifically, the Court found as follows:

> Cooper testified that because the Policy was written on a "blanket basis," it was MMA's responsibility to merely notify Defendant as to where inventory was located, but if it "was a location that wasn't on there before, then it's [Defendant's] responsibility to endorse it after they are notified from either MMA or the client" (Dkt. #82 at p. 72). This contradicts the plain language of Endorsement No. 20, which notes: "[t]his endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured" (Ex. P-8). Thus, it was not Defendant's responsibility to endorse the Policy, it was Plaintiff's responsibility to request the endorsement.

(Dkt. #90 at p. 16).

The Court went on to explain how unique this predicament was for the parties:

> [I]t is counterintuitive to find that it is the insured's responsibility to request an endorsement that limits the available coverage under an insurance policy. But Plaintiff admits that this was its burden (Dkt. #87 at p. 41 ("The insured must request the change, just like Endorsement 20 says.")). Indeed, MMA had requested other endorsements related to different locations on Plaintiff's behalf (Ex. P-30). However, even though the December 19 Inventory Update was changing the risk at a location that had previously been reported as a no-inventory location, Cooper testified that MMA did not request an endorsement specifically regarding Lot 1368 after December 19, 2022 (Dkt. #82 at p. 45). Plaintiff cannot now claim to benefit from the lack of an effective endorsement prior to the Flood Loss merely because the parties failed to endorse the Policy. Had Plaintiff timely requested Endorsement No. 20, Defendant would have excluded Lot 1368 for flood coverage, as originally intended, and then, Plaintiff would have evaluated the need for DIC coverage at Lot 1368, just like it did with Lot 1498.

(Dkt. #90 at p. 16 n.7).

Again, contrary to what Plaintiff argues, the Court did not find that Defendant was actively misleading Plaintiff when it issued an endorsement to the policy.

Furthermore, the Court noted that there was an exception to this general rule under *Menchaca*, the "independent-injury rule," which would have allowed Plaintiff's extra-contractual claims to survive (Dkt. #90 at p. 17 (citing *Menchaca*, 545 S.W.3d at 499)). The Court explained that there were two aspects to this rule; however, the Court found that Plaintiff did not argue that either aspect of the independent-injury rule was applicable in the instant case (Dkt. #90 at p. 18). Accordingly, the Court did not apply the incorrect legal standard as Plaintiff suggests and there is no basis to grant a new trial or amend the judgment as to Plaintiff's bad-faith claims.

## CONCLUSION

It is therefore **ORDERED** that Blue Compass's Motion for New Trial or to Alter or Amend the Judgment (Dkt. #92) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 24th day of August, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE